IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JELANI WALKER,

    Petitioner,

v.

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:19-CV-1740
JUDGE JAMES L. GRAHAM
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner who is proceeding without the assistance of counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition and Memorandum in Support, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

## I. BACKGROUND

Petitioner challenges his convictions after a jury trial in the Athens County Court of Common Pleas on aggravated trafficking and possession of drugs. The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 4} On March 16, 2016, Walker was indicted with one count of trafficking in heroin in an amount equal to or greater than 250 grams, a first-degree felony, in violation of R.C. 2925.03(A)(1), with a major drug offender specification; one count of possession of heroin in an amount equal or greater than 250 grams, a first-degree felony, in violation of R.C. 2925.11(A), with a major drug offender specification; and one count of possession of cocaine in an amount less than 5 grams, a fifth-degree felony, in violation of R.C. 2925.11(A).
>
> {¶ 5} A superseding indictment was later issued charging Walker with one count of aggravated trafficking in Pentylone in an amount equal to or greater than 5 times the bulk amount but less than 50 times the bulk amount, a second-degree

felony, in violation of R.C. 2925.03(A)(2); one count of aggravated possession of Pentylone in an amount equal to or greater than 5 times the bulk amount but less than 50 times the bulk amount, a second-degree felony, in violation of R.C. 2925.11(A); and one count of possession of cocaine in an amount less than 5 grams, a fifth-degree felony, in violation of R.C. 2925.11(A).

{¶ 6} On September 16, 2016, the case proceeded to trial. The following evidence was presented, in relevant part:

{¶ 7} Trooper Drew Kuehne of the Ohio State Highway Patrol testified that on March 23, 2016, he was on routine patrol in Athens County when he observed a blue Toyota Rav4 commit a traffic violation. He initiated a traffic stop.

{¶ 8} As Trooper Kuehne approached the vehicle, he saw a male occupant, later identified as Walker, sit up in the backseat. When he got to the passenger side window, he asked the driver, later identified as Leisa Strong, for her license and registration. Strong could not provide Trooper Kuehne with her license; but Walker provided him with a copy of the vehicle's rental agreement. Trooper Kuehne then asked Strong to accompany him to his cruiser so he could gather her information. Strong complied.

{¶ 9} Back at his cruiser, Trooper Kuehne learned that Strong's license was expired. He also noticed inaccuracies on the rental agreement Walker provided him. For example, the agreement listed a vehicle other than a blue Toyota Rav4. Trooper Kuehne returned to the vehicle and asked Walker whether he had an accurate agreement. Walker then provided Trooper Kuehne with the correct rental agreement showing that he had rented the vehicle the previous day in Michigan. During this encounter, however, Trooper Kuehne noticed that Walker appeared very nervous. For instance, his carotid artery on the right side of his neck was pulsating; he was moving around in his seat and rubbing his hands on his legs; and he was running his hands through his hair. Trooper Kuehne asked Walker if he could search the vehicle; but Walker refused. Trooper Kuehne returned to his cruiser where he entered Walker's and Strong's information into his system and started issuing Strong a citation.

{¶ 10} Meanwhile, Trooper Brian Spackey of Ohio Department of Public Safety, who had arrived on scene shortly after Trooper Kuehne, ran his canine around the vehicle. The canine indicated the presence of narcotics. Trooper Kuehne approached the vehicle and told Walker to exit the car. Instead of getting out of the vehicle, however, Walker rolled up his window and locked his door. Trooper Kuehne quickly opened the passenger door, unlocked the doors, and opened Walker's door. Walker appeared very nervous and was moving back and forth. Trooper Kuehne told Walker to step out of the car and show his hands. Walker did not, so Trooper Kuehne pulled him out of the car and patted him down. A few minutes later, Trooper Kuehne escorted Walker toward Trooper Spackey's patrol car; but before they made it to the cruiser, Walker sprinted away.

{¶ 11} Trooper Kuehne ran after Walker, yelling at him to stop. Walker kept running and eventually jumped into a small lake. Rather than going in after him, Trooper Kuehne waited for backup. Soon after, law enforcement officers from various agencies arrived on scene. For roughly the next hour, they tried to get Walker to come out of the water voluntarily. Walker refused and continued to wade in the water, just out of law enforcement's reach. After some time, however, law enforcement officers were able to make a "human chain" and remove Walker from the lake.

{¶ 12} A subsequent search of the vehicle revealed a residual amount of cocaine on the backseat and several trash bags and a toolbox in the trunk. One trash bag contained women's clothing and another contained men's clothing. A third trash bag contained what appeared to Trooper Kuehne to be men's toiletries (e.g., black electronic hair trimmers, a dark blue bottle of deodorant, Irish Spring soap); a cell phone charger that fit Walker's phone; and condoms. The trash bag also contained a clear plastic bag containing a ziplock bag full of a brown, rock-like substance, later identified as roughly 280 grams of Pentylone, a Schedule 1 controlled substance, and other items commonly associated with drug trafficking including, numerous rubber bands, a small razor blade, and a digital scale. There were also several hundred small plastic baggies inside the toolbox.

{¶ 13} At the close of the State's case, Walker moved for acquittal pursuant to Crim.R. 29, arguing that the State failed to present evidence that he possessed the drugs. The trial court denied Walker's motion; and the defense proceeded with its case.

{¶ 14} Walker was the sole witness to testify on behalf of the defense and denied knowing anything about the contents of the third trash bag. He claimed that his belongings were exclusively in the bag containing the men's clothing. Finally, he maintained that the only reason he fled from law enforcement was because he feared police brutality.

{¶ 15} At the close of the defense's case, Walker renewed his Crim.R. 29 motions. The trial court denied Walker's motions; and the matter was submitted to the jury for deliberations.

{¶ 16} The jury ultimately found Walker guilty of trafficking and possessing Pentylone but not guilty of possessing cocaine. At Walker's sentencing hearing, the trial court merged his convictions for sentencing purposes; and the State elected to proceed to sentencing on the trafficking charge. The trial court sentenced Walker to a mandatory five years in prison.

{¶ 17} Walker timely appeals.

II. Assignments of Error

{¶ 18} Walker presents the following assignments of error for our review:

Assignment of Error No. I:

Jalani Walker was denied his right to due process and a fair trial when the jury convicted him of possessing and trafficking drugs against the manifest weight of the evidence. Fifth and Fourteenth Amendments, United States Constitution. (Trial Tr. Vol. 1 at 165–166, 180–182, 193, 215–218; Exh.12; Sept. 15, 2016 Verdict Forms)

Assignment of Error No. II:

The trial court violated Mr. Walker's rights to due process and a fair trial when, in the absence of sufficient evidence, it failed to grant his Crim.R.29 motions as to possession and trafficking of drugs. State v. Hankerson, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982); Fourteenth Amendments to the United States Constitution; Article I, Section 16, of the Ohio Constitution; Crim.R. 29; Crim.R. 52(B). (Trial Tr. Vol. 2 at 72–73, 148)

Assignment of Error No. III:

Trial counsel provided ineffective assistance of counsel when it failed to properly request waiver of court costs. (Sentencing Tr. at 13–14; October 14, 2016 Judgment Entry)[.]

*State v. Walker*, 4th Dist. No. 16CA26, 2017 WL 5989078, at *1-3 (Ohio Ct. App. Nov. 9, 2017). On November 9, 2018, the appellate court affirmed the judgment of the trial court. *Id.* On April 25, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Walker*, 152 Ohio St.3d 1447 (Ohio 2018). On February 5, 2017, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 4, PAGEID # 335.) He asserted that he was denied effective assistance of counsel because his attorney failed to raise on appeal a claim of prosecutorial misconduct. (See ECF No. 4, PAGEID # 451.) On April 27, 2018, the appellate court denied the Rule 26(B) application. (ECF No. 4, PAGEID # 447.) On September 26, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Walker*, 153 Ohio St.3d 1485 (Ohio 2018).

4

On May 2, 2019, Petitioner filed this *pro se* habeas corpus petition. As his sole ground for relief, he asserts:

> Through several improper amendments, an improper omission of charge, and an improper circumvention of the Trial Court's ruling, Prosecutorial Misconduct was committed by the State depriving appellant of due process and a fair trial in violation of appellant's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution[.]

(ECF No. 1-1, PAGEID # 147.) It is Respondent's position that Petitioner has waived this claim by failing to raise it on direct appeal and that it does not provide him a basis for relief.

## II. PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the

5

course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*.

In order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id*. at 452 (quoting *Murray*, 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if the claim is procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S. Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." Id. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id*. at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were

7

we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*. at 854, 526 U.S. 838, 119 S. Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L.Ed. 761 (1950)).

*Id*. at 452–53.

If, after considering all four factors of the *Maupin* test, the Court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96), *cert. denied*, 135 S. Ct. 1545 (2015).

### III. APPLICATION

Respondent correctly notes that Petitioner failed to raise the claim he now presents on direct appeal. He may now no longer do so, under Ohio's doctrine of *res judicata*. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (citing *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006) (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967)). Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise his claim on direct appeal, and, consequently, the first prong of the *Maupin* test is satisfied. Moreover, Ohio courts have consistently relied upon the doctrine of *res judicata* to refuse to review the merits of procedurally barred claims. *See, e.g., State v. Cole*, 2 Ohio St.3d 112 (1982). The Sixth Circuit has held that Ohio's doctrine of *res judicata* is an independent and

8

adequate ground for denying federal habeas relief. *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). *Maupin*'s independence prong is likewise satisfied under because Ohio's doctrine of *res judicata* does not rely on or otherwise implicate federal law. The undersigned finds that the first three *Maupin* factors are satisfied.

As cause for this procedural default, Petitioner asserts the denial of the effective assistance of counsel. This Court considers this claim *de novo* when determining whether Petitioner can establish cause for his procedural default. *See Hively v. Warden*, 2018 WL 722864, at *7 (S.D. Ohio Feb. 5, 2018) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")). Regardless, the record fails to reflect that Petitioner can establish the denial of the effective assistance of appellate counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

The state appellate court rejected Petitioner's claim of the denial of the effective assistance of appellate counsel as follows:

> Walker was originally indicted with one count of trafficking in heroin in an amount equal to or greater than 250 grams, a first-degree felony, in violation of R.C. 2925.03(A)(1), with a major drug offender specification; one count of possession of heroin in an amount equal or greater than 250 grams, a first-degree felony, in violation of R.C. 2925.11(A), with a major drug offender specification; and one count of possession of cocaine in an amount less than 5 grams, a fifth-degree felony, in violation of R.C. 2925.11(A). The charges arose after a traffic stop and search of a vehicle in which Walker was a passenger turned up a a large quantity of suspected heroin and other items commonly associated with drug trafficking.

9

Scientific testing of the confiscated substance later revealed that it did not contain heroin, as originally suspected, but rather contained Pentylone, a Schedule 1 controlled substance. Thus, a superseding indictment was issued charging Walker with one count of aggravated trafficking in Pentylone in an amount equal to or greater than 5 times the bulk amount but less than 50 times the bulk amount, a second-degree felony, in violation of R.C. 2925.03(A)(1); and one count of possession of cocaine in an amount less than 5 grams, a fifth-degree felony, in violation of R.C. 2925.11(A). Soon after the superseding indictment was issued, the State moved to amend the superseding indictment by changing the aggravated trafficking charge brought under subsection (A)(1) of R.C. 2925.03 to an aggravated trafficking charge under subsection (A)(2) of R.C. 2925.03. The trial court denied the motion to amend, finding that the requested amendment would change the identity of the offense.

Within days of its failed attempt to amend the superseding indictment under Crim.R. 7(D), the State issued a second superseding indictment charging Walker with one count of aggravated trafficking in Pentylone in an amount equal to or greater than 5 times the bulk amount but less than 50 times the bulk amount, a second-degree felony, in violation of R.C. 2925.03(A)(2); one count of aggravated possession of Pentylone in an amount equal to or greater than 5 times the bulk amount but less than 50 times the bulk amount, a second-degree felony, in violation of R.C. 2925.11(A); and one count of possession of cocaine in an amount less than 5 grams, a fifth-degree felony, in violation of R.C. 2925.11(A).

The matter eventually proceeded to trial, and the jury ultimately found Walker guilty of trafficking and possessing Pentylone but not guilty of possessing cocaine. At Walker's sentencing hearing, the trial court merged his convictions for sentencing purposes; and the State elected to proceed to sentencing on the trafficking charge. The trial court sentenced Walker to a mandatory five years in prison, and ordered that he pay court costs.

\*\*\*

Walker contends that his appellate counsel was ineffective because he failed to raise the following assignment of error in his direct appeal:

Assignment of Error:

> Through several improper amendments, an improper omission of a charge, and an improper circumvention of the Trial Court's ruling, Prosecutorial Misconduct was committed by the State depriving appellant of dur process and a fair trial in violation of appellant's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, Section 10 and 16, Article I of Ohio Constitution.

> In support of his proposed assignment of error, Walker notes that he was originally indicted of trafficking in heroin in violation of R.C. 2925.03(A)(1), but was eventually convicted of aggravated trafficking in Pentylone in violation of R.C. 2925.03(A)(2). He then cites *State v. Hicks*, 4th Dist. Adams No. 11CA933, 2012-Ohio-3831, and argues that the prosecution engaged in misconduct by improperly amending the name and identity of the trafficking offense in which he was eventually convicted. Walker contends that "[e]ach improper amendment to charges, by the State of Ohio, deprived [him] of his right to due process and a fair trial, which violated [his] Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution." Walker further argues that his appellate counsel was ineffective for failing [to] raise this argument on his direct appeal.
>
> *Hicks* is easily distinguishable from the case sub judice. In *Hicks*, the defendant was charged via indictment with aggravated vehicular assault under R.C. 2903.08(A)(1)(a). *Id*. at ¶¶ 4, 6. The trial court denied the motion, and on appeal this Court upheld the trial court's ruling noting, "such an amendment would have changed the name and identity of the charged offense in violation of Crim.R. 7(D)." *Id*. at ¶¶ 4, 6. Here, the changes to the original trafficking offense were effectuated through two separate superseding indictments after presentment to grand jury. They were not done through a Crim.R. 7(D) motion to amend, and thus the concerns raised in Hicks are not present here. *See State v. Moore*, 145 Ohio App.3d 213, 217, 762 N.E.2d 430 (1st Dist. 2001), quoting *Middleton v. Blevins,* 35 Ohio App.3d 65, 67, 519 N.E.2d 846 (12th Dist. 1987) ("'[W]here a defendant is charged with an offense and the government wishes to amend that charge to another offense which is neither the same offense in name or identity nor a lesser included offense to the original charge, unless the defendant agrees to waive service of another charging instrument, he must be served with a new charging instrument (indictment, information, or complaint) setting forth the nature of the charge against him.'"). In reviewing the materials attached to Walker's application, it is clear that Walker's appellate counsel recognized this important distinction when choosing not to raise the issue in *Walker I*. *See* Appellant's Application for Reopening, Exhibit O, Letter from Office of the Ohio Public Defender, p.2 (stating that *Hicks* "address[es] amendments to an indictment and double jeopardy. As thoroughly discussed previously, your case involves a second superseding indictment, not an amendment. * * * At this stage of litigation, these cases are inapplicable to your case."). Therefore, we find that appellate counsel was not ineffective in failing to raise this meritless issue on direct appeal.
>
> . . . . Accordingly, his application is denied.

(*Entry Denying Application to Reopen Appeal*, ECF No. 4, PAGEID # 447-452.)

In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland*, 466 U.S. at 668. *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. A'ppx 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted)); (citing *Strickland*, 466 U.S. at 687), *cert. denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. . . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?
>
> (2) Was there arguably contrary authority on the omitted issues?
>
> (3) Were the omitted issues clearly stronger than those presented?
>
> (4) Were the omitted issues objected to at trial?
>
> (5) Were the trial court's rulings subject to deference on appeal?
>
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> (7) What was appellate counsel's level of experience and expertise?
>
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
>
> (9) Is there evidence that counsel reviewed all the facts?
>
> (10) Were the omitted issues dealt with in other assignments of error?
>
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427–28 (citations omitted).

Petitioner argues that he was denied fair notice of the charges and that the prosecutor committed prosecutorial misconduct by filing a second superseding indictment against him after the trial court had denied the State's motion to amend the first indictment. This claim fails. The state court determined that the filing of a second superseding indictment complied with Ohio law. This Court is bound by that determination. *See Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (this court must "defer to a state court's interpretation of its own rules of evidence and procedure") (citations omitted); *Bennett v. Warden, Lebanon Corr. Inst.*, 782 F.Supp.2d 466, 478

(S.D. Ohio Mar. 15, 2011) ("[T]he state courts are the final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state law questions.")). Further, and despite Petitioner's lengthy arguments to the contrary, federal law likewise does not prohibit the government from filing a superseding or second superseding indictment that adds additional charges, increases the seriousness of the offenses charged against the defendant, or alters those charges in some manner. *See*, *e.g., United States v. Brown*, No. 12-cr-79-KKC-CJS, 14-cv-7341-KKC-CJS, 2016 WL 11214440, at *16-17 (E.D. Ky. July 20, 2016) (no prosecutorial misconduct based on the filing of superseding indictments) (citing *United States v. Chew*, 497 F. App'x 555, 559 (6th Cir. 2012)); *United States v. Watford*, 468 F.3d 891, 908-09 (6th Cir. 2006) ("It is well established that 'as long as [a] superseding indictment does not broaden the original indictment, the superseding indictment relates back to the filing of the original indictment even if the superseding indictment is filed outside of the statute of limitations.'") (citing *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999)); *United States v. Koubriti*, 435 F.Supp.2d 666, 674 (E.D. Mich. 2006) (Double Jeopardy Clause does not bar the filing of a superseding indictment following dismissal of the original indictment)).

Thus, Petitioner has failed to establish the denial of the effective assistance of counsel and cause for his procedural default of his sole ground for relief.

## IV. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED**.

## **PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


                                           /s/ *Chelsey M. Vascura*
                                           CHELSEY M. VASCURA
                                           UNITED STATES MAGISTRATE JUDGE